IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Rachael Cox, | : | |
| | : | |
| Plaintiff | : | Case No. C-1-04-277 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Officer James Drake, *et al.* | : | ORDER GRANTING DEFENDANTS' |
| | : | MOTION FOR SUMMARY |
| Defendant | : | JUDGMENT |

This matter comes before the Court on the Renewed Motion for Summary Judgment of All Defendants as to All Claims (doc. #21); Plaintiff's Memorandum in Opposition to Defendants' Renewed Motion for Summary Judgment (doc. #23), which incorporates by reference Plaintiff's Memorandum in Opposition to Motion for Summary Judgment of Defendant Officer James Drake (doc. #15), and Defendants' Reply Memorandum in Support of Defendants' Renewed Motion for Summary Judgment (doc. #25). Plaintiff in this case is Rachael Cox. Defendants in this case are the City of Deer Park, Ohio ("Deer Park"), Officer James Drake, in his individual capacity, and Deer Park Police Chief Al Gille[1], in his individual and official capacities (collectively, "Defendants"). Cox brought claims against all Defendants pursuant to 42 U.S.C. § 1983 for deprivation of her rights under the Due Process Clause of the Fourteenth Amendment and under the Ninth Amendment, and also brought a defamation claim under Ohio law against Officer Drake. Cox has since abandoned her defamation claim against Officer Drake and her Ninth Amendment claim against all Defendants. (See doc.#15 at 1 n.1.,

---

[1]The Amended Complaint misspells Chief Gille's name as "Gilley." (See doc. #17.)

1

incorporated by doc. #23 at 1.) The only remaining claims, then, are Cox's claims against all Defendants under §1983 for deprivation of her rights under the Due Process Clause of the Fourteenth Amendment. For the reasons that follow, the Court **GRANTS** Defendants' Renewed Motion for Summary Judgment of All Defendants as to All Claims (doc. #21).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

   A.  **Facts**

Cox's version of the facts is substantially different from Officer Drake's version, and also differs in several respects from the account of Cox's landlord, Elizabeth Nabors. On December 1, 2001, Rachael Cox, her then-husband, Johnny Cox, and their toddler moved into a rented house located at 4267 Redmont Avenue in Deer Park, Ohio. (Nabors dep. at 5-6.) Elizabeth Nabors owns the house. Nabors rented the house first to the Coxes, pursuant to a year-long lease, and then, following the Coxes' divorce, just to Rachael Cox, pursuant to a month-to-month lease. (Cox. dep. at 9-10; Nabors dep. at 5-6.) Even after Johnny Cox was no longer on the lease, he occasionally stayed at the Redmont Avenue house. (Cox dep. at 8.) Cox admitted at her deposition that she and Johnny Cox used crack cocaine at the Redmont Avenue house on approximately twelve occasions, the last of which occurred in November 2003. (Id. at 26, 29, 72.) The Deer Park Police were called to the Cox home on several occasions before the alleged conduct at issue in this case, which began on April 1, 2004. (Id. at 17,23,43-44.)

On April 1, 2004, Officer Drake stopped the car in which Johnny and Rachael Cox were driving, and arrested Johnny Cox pursuant to an outstanding warrant. During the traffic stop, Cox told Officer Drake that she thought she needed to leave the neighborhood. (Id. at 62.) Later that day, Cox met with Officer Drake at the police station. (Id. at 52-3.) Officer Drake told Cox

that the police had received about sixteen 9-1-1 calls regarding her residence. (Id. at 53.) Officer Drake also told Cox that the police had received reports that Johnny Cox was selling crack cocaine out of the garage at the Redmont Avenue house. (Id. at 54) Officer Drake told Cox that he believed that she was selling drugs out of the house. (Id. at 87.)

Cox testified that Officer Drake then told her that he did not want "people like [her] in the[] neighborhood" and that she needed to find a new place to live. (Id. at 53, 55.) Cox testified that Officer Drake told her that "the police might come and kick [her] door in" because they knew there were drugs in the house. (Id. at 57.) Cox testified that Officer Drake told her that he was going to talk with Nabors and tell her that her house would be taken away via abatement if Drake was not evicted. (Id. at 54.) Officer Drake admitted that he told Cox that he intended to show Nabors the log of calls the police had received about the Redmont Avenue house as part of a service that Deer Park performs for its property owners, but he denied telling Cox that Nabors could lose her house. (Drake dep. at 36, 39-40.) Officer Drake also denied having told Cox that she needed to find a new place to live. (Id. at 35,43.)

Officer Drake and Nabors agree that they met later in the afternoon on April 1, 2004. Officer Drake testified that he told Nabors about the unusually high number of calls the police had received about her Redmont Avenue house and that he showed her a copy of the call log. (Id. at 47.) He also acknowledged telling Nabors about an incident on November 10, 2003, when police reported to Cox's house after her mother called for an ambulance to take Cox, who had been using crack that day, to the hospital. (Id. at 49; Nabors dep. at 17.) Officer Drake also told Nabors about the calls the police received regarding suspicious activity at the Cox's home. (Drake dep. at 49.)

3

Nabors testified that Officer Drake told her that neighbors were complaining about traffic in and out of the house and he asked her if she could do something about it. (Nabors dep. at 18-19.) Nabors testified that she assumed that Officer Drake was suggesting that she evict Cox from the house. (Id. at 21.) Nabors testified that Officer Drake explained to her that she could not continue to rent her property to someone knowing there is drug activity, and used the word abatement. (Id. at 26.) Officer Drake has admitted that he advised Nabors about the fact that the activities at her house might be considered a nuisance and that a judicial declaration of a nuisance could result in her losing the house pursuant to abatement.[2] (Drake dep. at 51-52.)[3]

Nabors contacted an attorney, who faxed a notice form to her. (Nabors dep. at 19.) Then Nabors went to Cox's house and gave Cox a form Notice to Leave the Premises requesting that Cox vacate the premises by April 5, 2004. (Nabors dep. at 25 and ex. 3.) Cox told Nabors she would leave the rental house, but that there was no way she could leave that quickly. (Cox dep.

---

[2] Ohio Revised Code § 2925.13 provides in relevant part:
> (B) No person who is the owner, lessee, or occupant, or who has custody, control, or supervision, of premises or real estate, including vacant land, shall knowingly permit the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense by another person. . . .
> (F) Any premises or real estate that is permitted to be used in violation of division (B) of this section constitutes a nuisance subject to abatement pursuant to Chapter 3767. of the Revised Code.

[3] Both Officer Drake and Cox testified at their depositions about what Nabors said at the meeting between Officer Drake and Nabors, and what Nabors later told Cox had been said at the meeting. "Under Fed.R.Civ.P. 56(e), evidence submitted in opposition to a motion for summary judgment must be admissible. . . . Hearsay evidence . . . must be disregarded." U.S. Structures, Inc. v. J.P. Structures, Inc. 130 F.3d 1185, 1189 (6th Cir. 1997). Thus, in ruling on Defendants' motion, this Court may not consider either Officer Drake's or Cox's hearsay testimony regarding Nabors' alleged statements.

at 82.) Cox asked Nabors if she could stay for fifteen days to have time to find a new place and to move and Nabors agreed. (Cox dep. at 58, 82; Nabors dep. at 29.) Cox testified that sometime thereafter, Officer Drake called her and told her that she should get out as soon as possible. (Cox dep. at 58.) Cox also testified, however, that she spoke with Officer Drake, and that he said it was fine for her to have fifteen days so long as she left by April 15, 2004. (Id. at 82-3.) Officer Drake denies having any contact with Nabors or Cox after April 1, 2004. (Drake dep. at 55.)

Cox testified that she moved out of the Redmont Avenue house by April 15, 2004. (Cox dep. at 81-83.) Nabors testified, however, that Cox still had things in the house until about April 17, 2004. (Nabors dep. at 33.) Nabors testified that she did not call Cox to tell her to hurry her move, and at Cox's request, gave her more time to move so she would not have to move her things in the rain. (Nabors dep. at 32.) Nabors never instituted eviction proceedings in court. (Nabors dep. at 34.)

**B.  Procedural History**

On April 21, 2004, Cox filed her initial Complaint against Officer Drake. (Doc. #1.) Officer Drake filed an Answer (doc. #3) denying Cox's claims against him. On November 30, 2005, Cox filed a Motion to Amend her complaint to add the City of Deer Park and Deer Park Police Chief Al Gille, in his individual capacity, as additional Defendants.[4] On December 23, 2004, Officer Drake filed a motion opposing Cox's motion to amend the complaint on the

---

[4]In support of her motion, Cox offered Officer Drake's deposition testimony where he said that Chief Gille was aware of his challenged conduct at all times. Cox argued that such testimony provided the basis for municipal liability, making the City of Deer Park a proper party. Cox argued also that given Officer Drake's testimony, Chief Gille was also a proper party on the same grounds as Officer Drake.

grounds that there was no constitutional violation, so amending the complaint would be futile. (Doc. #8.) On January 25, 2005, Officer Drake filed a Motion for Summary Judgment. (Doc. #7). On March 1, 2005, this Court granted Cox leave to amend her complaint.[5] (Doc. #16.) The Amended Complaint (doc. #17) added Chief Gille, in his individual capacity, and the City of Deer Park as Defendants, but stated the same causes of action as the original Complaint. On March 10, 2005, Defendants filed an Answer (doc. #19) denying the claims against them. Defendants filed the instant Renewed Motion for Summary Judgment on July 22, 2005. (Doc. #21.)

## II.    JURISDICTION AND LEGAL STANDARD

This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 over Cox's state law claim. Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact are in dispute, and the Court must read the evidence, together with all inferences that can permissibly be drawn therefrom, in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to

---

[5]In response to Officer Drake's argument in opposition to Cox's motion to amend, the Court noted that the question of whether a constitutional violation occurred went to the merits of the dispute, which was appropriately resolved at the dispositive motion stage. (Doc. # 16.)

6

a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." Id. at 252.

### III.     ANALYSIS

Cox alleges in her Amended Complaint that Defendants violated her Fourteenth Amendment rights by Officer Drake's actions in "driving [Cox] and her 3-year-old son out of their rental unit and beyond the city limits of Deer Park." (Doc. #17, ¶ 17.) The Fourteenth Amendment to the Constitution states in relevant part that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Cox brings her Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To succeed in her claim under § 1983, Cox must prove that: (1) she was deprived of rights, privileges, or immunities secured by federal law; and 2) the conduct complained of was committed by a person acting under the color of state law. See Daughenbaugh v. City of Tiffin, 150 F.3d 594, 597 (6th Cir. 1998).

An individual has "a clearly established right not to have property in which [he or she] enjoyed a lawful possessory interest seized by state action in violation of the constitution." See Haverstick Enterprises, Inc. v. Financial Fed'l Credit, Inc., 32 F.3d 989, 994 (6th Cir. 1994) (regarding officer's involvement in private repossession of truck). More specifically, "a possessory interest in property invokes procedural due process, which would require adequate notice and a meaningful hearing prior to any attempt to deprive the interest holder of any rights." Hamby v. Neel, 368 F.3d 549, 560 (6th Cir. 2004). Therefore, Cox had a protectable due process right in her rental house on Redmont Avenue. Cox must still show, however, that she was deprived of that right. Cox must also show that Officer Drake's actions "translated into participation in the private [eviction] to a degree tantamount to state action." See Haverstick, 32 F.3d at 995.

Cox cites to Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002), cert. denied, 538 U.S. 1032 (2003), in support of her argument that Officer Drake can be held responsible for the deprivation of her due process rights because he coerced Nabors into evicting Cox and Cox into leaving Deer Park. (See doc. #15 at 7-9.) Defendants contend that Cox's argument is flawed because Cox has not shown that she was deprived of her due process rights. Defendants are correct.

In Thomas, the Sixth Circuit considered four police officers' appeal from the district court's order denying their motion for summary judgment on qualified immunity. 304 F.3d at 565. The Thomas plaintiffs brought suit under § 1983 alleging that the officers had violated their due process rights under the Fourteenth Amendment by evicting them from a shelter without a judicial order. Id. In Thomas, the director of the shelter called the police to have the plaintiff-

tenants, with whom she was having a dispute, removed from the shelter. Id. at 566. When the police arrived, they entered the plaintiffs' rooms and told them they had to leave the shelter immediately. Id. at 567. The officers did not physically confront the plaintiffs, but they did order the plaintiffs to leave before they could gather all their belongings. Id. The Sixth Circuit stated that the plaintiffs had a possessory interest in their property that "invoke[d] procedural due process protections," including "notice and a hearing prior to eviction." Id. at 576. The Sixth Circuit held that, without such, the plaintiffs' eviction "constituted a violation of their clearly established Fourteenth Amendment rights." Id. at 582.

The Sixth Circuit recently considered a similar scenario in Turner v. City of Taylor, 412 F.3d 629 (6th Cir. 2005). In Turner, the Sixth Circuit reversed a district court's grant of summary judgment to a police officer accused of constructively evicting the plaintiff-appellant. Id. at 652. The plaintiff had been arrested for domestic violence and assault and battery against his live-in girlfriend and was later released from jail without an arraignment. Id. at 633. The plaintiff alleged that when he returned home, two police officers confronted him and ordered him to leave his house or face arrest. Id. at 644. Plaintiff alleged that he then called the local police department and spoke with a supervising officer, who also told him that he would go to jail if he did not leave his house. Id. at 645. The court found that "[s]uch police action arguably was . . . a denial of due process in violation of the Fourteenth Amendment." Id. at 644.

Both Thomas and Turner are distinguishable from this case. First, in both Thomas and Turner, it was undisputed that the plaintiffs had been denied access to their residences, by police officers on the scene, and therefore that they had been deprived of their property interest. By contrast, Cox was never deprived of physical access to her house by the police, or anyone else, for

9

that matter. Moreover, in both Thomas and Turner, the Sixth Circuit's finding that the plaintiffs were denied due process hinged on the fact that the plaintiffs had not received notice or a hearing before they were evicted. Thomas, 304 F.3d at 576-77; Turner, 412 F.3d at 644 n.7. In this case, however, Cox did receive a notice of eviction. (Cox dep at 82; Nabors dep. at 25 and ex. 3.) Further, it is undisputed that Nabors never instituted eviction proceedings in court, Nabors dep. at 34., so a hearing was never necessary. Unlike the plaintiffs in Thomas and Turner, there is no evidence that Cox protested Nabors' request that she vacate the house. Instead, Cox asked Nabors if she could stay fifteen days, and Nabors said that was fine. (Cox dep. at 58, 82; Nabors dep. at 29.) These facts do not amount to an eviction under Ohio law, see Wood v. Rathfelder, 128 F. Supp. 2d 1079, 1081-82 (N.D. Ohio 2000) (no actual or constructive eviction under Ohio law where landlord served tenant with eviction notice, but took no further actions, and tenants voluntarily terminated rental agreement); Greenburg v. Murphy, 1904 WL 1147, at *3 (Cir. Ct. Ohio June 20, 1904) (no eviction where landlord served notice to vacate on plaintiff, but plaintiff left voluntarily before landlord took further action); see also 65 Ohio Jur. 3d Landlord and Tenant § 175 (2005) (notice by landlord that tenancy is being terminated, combined with a demand for possession of the premises, and voluntary compliance by tenant without protest, is not an eviction), nor to a deprivation of Cox's possessory property interest.[6]

---

[6]The Court notes that even if the evidence showed that Cox was deprived of her posessory interest in the house without notice and a hearing, it is questionable whether Officer Drake's actions relating to Cox's move would qualify as state action under the law. Numerous courts have addressed the distinction "between conduct by law enforcement officers which comprised actual participation in a seizure of private property and actions which respected the bounds of mere 'civil standby' involvement." Haverstick, 32 F.3d at 995. A police officer's mere presence at the site of an eviction or repossession is insufficient to amount to state action. See, e.g., Thomas, 304 F.3d at 575 (distinguishing passive presence at eviction from active participation); and Haverstick, 32 F.3d at 995 (passive presence at reposession); Barrett v.

10

Officer Drake's alleged conduct was arguably reprehensible, but absent any deprivation of property, his conduct does not support a § 1983 claim for deprivation of a procedural due process right. Thus, even when taken in the light most favorable to Cox, the evidence does not show a genuine dispute of material fact regarding whether Cox was deprived of her possessory property interest in violation of her due process rights.[7] Cox has thus failed to show that there is any issue

---

Harwood, 189 F.3d 297, 302 (2d Cir. 1999) (same) (citing U.S. v. Coleman, 628 F.2d 961, 963-64 (6th Cir. 1980), and Wright v. National Bank, 600 F. Supp. 1289, 1295 (N.D.N.Y. ), aff'd, 767 F.2d 909 (2nd Cir. 1985)). By contrast, courts have found state action where officers are both present at the scene of an eviction and cause the plaintiff to leave through intimidation or by the threat of physical violence or arrest. See Turner, 412 F.3d at 644-45; Thomas, 304 F.3d at 565; accord Howertown v. Gabica, 708 F.2d 380, 383-84 (9th Cir. 1983). For instance, in Howertown, the Ninth Circuit found state action where police officers were present at "at each step of the [plaintiffs'] eviction," and in addition, an officer had both privately approached the plaintiffs at their trailer to suggest that they move, and on another occasion, inquired about when the plaintiffs were moving. Officer Drake's alleged statements and actions are similar to those of the officer in Howertown, with one significant difference – Cox, unlike the police officers in Howertown, was not present either when Nabors served Cox with the notice, or when Cox moved. Howertown also involved an illegal eviction, id. at 384, whereas here, Nabors began lawful eviction proceedings, and then agreed to forgo such proceedings when Cox agreed to leave on her own. The Court notes that it found no cases even discussing state action in the context of a § 1983 claim where a defendant officer was not present at the time of a plaintiff's eviction or repossession, let alone any cases involving a § 1983 claim for violation of a plaintiff's possessory interest in property where, as here, no actual or constructive eviction in fact occurred. Thus, this case appears to fall somewhere between those cases that clearly do not involve state action and those that clearly do. The Court need not reach the question of state action, however, since the evidence leaves no genuine dispute of material fact that Cox was not deprived of her possessory interest in her rental home.

[7]For the same reason discussed *infra* at note, Cox's citations to Blum v. Yaretsky, 457 U.S. 991 (1982); Adams v. Vandemark, 855 F.2d 312 (6th Cir. 1988), cert. denied, 488 U.S. 1042 (1989); and Merritt v. Mackey, 827 F.2d 1368, (9th Cir. 1987), are inapplicable. Cox cites those cases in support of her argument that "a state actor can be held responsible for a private decision 'when [he] has exercised coercive power or has provided such a significant encouragement, either overt or covert, that the choice must in law be that of the state.'" (See doc. #15 at 6.) Cox argues that, as such, Defendants can be held liable under 1983 for Officer Drake's influence in Nabors' decision to evict Cox. More specifically, Cox encourages this Court to apply the analysis of Merritt to this case. In Merritt, the Ninth Circuit considered an employee's appeal of the district court's order granting summary judgment to federal and state officials on his § 1983 claim. 827 F.2d 1368. The plaintiff brought a § 1983 claim alleging that the defendants, which

11

for trial on her claims under § 1983.[8]  As such, the Court **GRANTS** summary judgment to Defendants on Cox's claims against Defendants under 42 U.S.C. § 1983.  Because Cox has abandoned her Ninth Amendment and defamation claims, the Court also **GRANTS** summary judgment to Defendants on those claims.  The Court therefore **GRANTS** Defendants' Renewed Motion for Summary Judgment of All Defendants as to All Claims (doc. #21).

## IV.   CONCLUSION

---

included state and federal officials and the United States, caused his termination without a hearing in violation of his due process rights under the Fourteenth Amendment.  Id. at 1369-70.  The plaintiff was fired from his job after state and federal officials, who were evaluating his employer for federal funding, wrote a report conditioning further funding on plaintiff's termination.  Id. at 1370.  The Ninth Circuit stated that the plaintiff had a procedural due process right arising from his reasonable expectation in continued employment.  The Court held that the government officials could be held liable for the deprivation of that right because of their indirect but intentional role in the plaintiff's termination, even though it was plaintiff's employer who actually terminated the plaintiff's employment.  Id. at 1371-73.  In Merritt, however, unlike in this case, the plaintiff had been deprived of his procedural due process rights.  This Court need not decide whether Merritt's indirect coercion analysis applies to Officer Drake's conduct in this case, as Cox has not shown a deprivation of her due process rights.

[8] As such, the Court need not address the questions of whether there was state action, see infra notes 6 and 7, whether Officer Drake, Chief Gille, and the City of Deer Park can be held liable for Nabors' conduct, whether Officer Drake was acting pursuant to an official policy or custom, or whether Defendants are entitled to qualified immunity.

For the foregoing reasons, Defendants' Renewed Motion for Summary Judgment of All Defendants as to All Claims (doc. #21) is **GRANTED**.  Because Cox has abandoned her Ninth Amendment and defamation claims, there are no claims remaining in this case, and it is hereby **ORDERED** to be closed.

IT IS SO ORDERED.

                                                ___s/Susan J. Dlott_____
                                                Susan J. Dlott
                                                United States District Judge